IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **THE ESTATE OF DESHAWN NEWTON,** | § | |
| by and through the personal representatives | § | |
| Duane Newton and Theresa Grant Newton; | § | |
| **DUANE NEWTON**, an individual; and | § | |
| **THERESA NEWTON,**[1] an individual, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:10-CV-809-L** |
| | § | |
| **WES GRANDSTAFF, JANE DOE** | § | |
| **GRANDSTAFF, NEXT LEVEL BALLERS** | § | |
| a sole proprietorship, **YMCA, YMCA** | § | |
| **OF METROPOLITAN DALLAS** | § | |
| nonprofit corporations, **NIKE USA INC.** | § | |
| an Oregon Corporation, **and JOHN DOES** | § | |
| **1 through 15**, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Motion for Summary Judgment of YMCA of Metropolitan Dallas,

filed February 7, 2012.  Plaintiffs, The Estate of DeShawn Newton, Duane Newton, and Theresa

Newton, did not file a response or brief.[2]  After careful consideration of the motion, brief of YMCA

---

[1] The court **directs** the clerk of the court to change the name "Teresa" to "Theresa" Newton, and change "thru" to "through" on the docket sheet.

[2] Under the Local Civil Rules of this district, a response and brief to a summary judgment motion are due 21 days after the motion is filed. LR 7.1(e).

of Metropolitan Dallas, appendix, record, and applicable law, the court **grants** the Motion for

Summary Judgment of YMCA of Metropolitan Dallas.

## I.     Background

The Estate of DeShawn Newton, by and through the personal representatives of Duane

Newton and Theresa Grant Newton; Duane Newton, an individual; and Theresa Newton, an

individual, (collectively, "Plaintiffs"), filed this action on April 21, 2010.  In the First Amended

Complaint for Damages ("Complaint"), filed November 23, 2010, Plaintiffs assert claims for

"negligence, wrongful death and outrage" against Wes Grandstaff; Jane Doe Grandstaff; Next Level

Ballers, a sole proprietorship; YMCA and YMCA of Metropolitan Dallas ("YMCA-MD"), nonprofit

corporations; Nike USA, Inc., an Oregon Corporation; and John Does 1 through 15 (collectively,

"Defendants").  DeShawn Newton died on April 26, 2008, while participating in a Next Level

Ballers Basketball Tournament in Dallas County, Texas.  Plaintiffs contend that Defendants failed

to provide adequate emergency medical personnel; adequate emergency medical equipment; and

effective ingress and egress to the facility when the basketball game was played.  Plaintiffs further

contend that the allegedly tortious conduct of Defendants was a direct and proximate cause of

injuries that they suffered, and they seek damages for their alleged injuries.  YMCA-MD has filed

a motion for summary judgment, seeking dismissal of this action against it.

## II.     Motion for Summary Judgment Standard - No Response Filed

Summary judgment shall be granted when the record shows that there is no genuine dispute

as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas

Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832

(1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Plaintiffs filed no response to the summary judgment motion. This failure, of course, does not permit the court to enter a "default" summary judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). A court, however, is permitted to accept the movant's facts as undisputed when no response or opposition is filed. *Id*. Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). The pleadings are not verified, and, therefore, Plaintiffs have presented no summary judgment evidence, and the court is allowed to accept YMCA-MD facts as undisputed.

## III.     Requests for Admissions

Some of the summary judgment evidence relied on by YMCA-MD comes from Requests for Admissions. YMCA-MD served Requests for Admissions on each of the three Plaintiffs on October 31, 2011. Under applicable law, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). The parties may stipulate to, or the court may order, a shorter or longer time to answer or object to the

request. *Id.* Plaintiffs did not serve answers or objections to the requests, and nothing exists in the

record to establish that the parties stipulated to, or that the court ordered, a time longer than 30 days

to respond. Accordingly, YMCA-MD's Requests for Admissions to Plaintiffs are deemed admitted

as a matter of law.

The effect of a matter admitted is that it "is conclusively established unless the court, on

motion, permits the admission to be withdrawn." Fed. R. Civ. P. 36(b). As no motion has been filed

by Plaintiffs, the matters set forth in YMCA-MD's Requests for Admissions to Plaintiffs are

conclusively established, and constitute competent and undisputed summary judgment evidence.

## IV.     Undisputed Facts

The following material facts are undisputed:

> A.      On April 26, 2008, there was a basketball tournament at a facility owned by
>
> YMCA-MD in Grand Prairie, Texas ("the facility"). YMCA-MD did not organize,
>
> host, manage, or sponsor the tournament and did not exercise or retain any control
>
> over the basketball tournament.
>
> B.      While seated at the bench during a game, DeShawn Newton suddenly
>
> collapsed. Right after DeShawn's collapse, a registered pediatric nurse began
>
> providing medical aid to him. Emergency Medical Service ("EMS") was
>
> immediately called and dispatched to the facility.
>
> C.      EMS personnel had no trouble entering or accessing the facility and were at
>
> DeShawn's side within five minutes of his collapse. Up until the time that EMS
>
> arrived, DeShawn was alive and breathing; however, shortly after EMS took over his
>
> care, DeShawn stopped breathing and went into cardiac arrest. EMS personnel

**Memorandum Opinion and Order - Page 5**

immediately began cardiopulmonary resuscitation ("CPR") on DeShawn and used

an automated external defibrillator ("AED").  DeShawn Newton, however, died of

a previously unknown and undiagnosed heart condition.

D.      YMCA-MD had personnel trained in both CPR and AED within the building

that housed the facility while the tournament was conducted.  YMCA-MD also had

appropriate emergency equipment in the facility, such as an AED.  YMCA-MD did

not use its equipment or provide any care to DeShawn because he was already

receiving care from a registered nurse and then later received care from EMS.

E.      YMCA-MD, the owner of the facility, did not participate in the activity of the

tournament.  There was also no problem of ingress or egress at the facility, and

DeShawn was not injured by any defect or condition of the property.

## V.      Analysis

### A.      Plaintiffs' Contentions

The court finds it helpful to include the key allegations and theories of recovery as stated in

Plaintiffs' Complaint.  The key allegations and theories of recovery are as follows:

> 3.3      On April 26, 2008, DeShawn Newton died.  He was
> participating in the Next Level Ballers National Basketball
> Tournament in Dallas County, Texas. DeShawn played the first half
> of his basketball game and performed very well.  He did not exhibit
> signs of physical stress.  DeShawn was sitting on the sidelines
> waiting for his turn to return to the game. He looked up at his family
> members and assented to their gestures of approval.  He smiled and
> looked on.  Suddenly, DeShawn went into a form of cardiac arrest.
> Theresa Grant Newton, DeShawn's mother, was summoned to the
> court because her son was not breathing.  She was accompanied by
> Deanna Newton and Earline Jackson.  While at DeShawn's side,
> DeShawn's coach attempted to administer CPR, but no one else came
> to DeShawn's aid.  Emergency medical [personnel] was dispatched
> to the location; however, they were not able to get into the facility

and to DeShawn's aid for between 20 to 30 minutes after the incident. There was no trainer certified in CPR.  There were no emergency medical personnel on duty at the facility. There was no medical equipment, such as a defibrillator, available in the event of an emergency.

3.4    The tournament took place at a YMCA facility. On information and belief, that facility was owned and operated by YMCA of Metropolitan Dallas and/or YMCA.  The tournament was sponsored by Nike USA, Inc.  On information and belief, YMCA of Metropolitan Dallas, YMCA, and Next Level Ballers, collect[ively] referred to as the defendants, took part in organizing and managing the tournament.  Each was responsible for ensuring that reasonable care was taken to provide that all necessary safety precautions were taken.

3.5    Defendants failed to hire or arrange for trainers certified in administering Cardio Pulmonary Resuscitation ("CPR") or other first aid to injured players or players in need of immediate medical attention.

3.6    Defendants also failed to provide for any emergency medical personnel to be present during the course of the tournament to provide immediate medical treatment for participants in the tournament in the event of a medical emergency.

3.7    Defendants also failed to provide for any emergency medical equipment, such as a defibrillator, available for use during the course of the tournament to provide immediate medical treatment for participants in the tournament in the event of a medical emergency.

3.8    The defendants failed to provide effective ingress and egress to the facility that would have allowed outside emergency medical providers immediate access to players injured or who might develop health conditions requiring immediate need of emergency medical care during the course of the tournament.

3.9    At the time of DeShawn Newton's death, Next Level Ballers tournament had 128  teams that participated.  It is the standard in the course of these kinds of tournaments with this level of play and participation that trainers certified in CPR be available in the event of an emergency.  It is the standard in the course of these kinds of tournaments for emergency medical personnel to be on hand and available to provide emergency medical care.  It is the standard in the

course of these kinds of tournaments to have available emergency medical equipment, such as a defibrillator, available to staff to be used in the event of a medical emergency.  It is standard in the course of these kinds of tournaments for the proper ingress and egress [to] be made available to outside emergency medical technicians or aid workers so that individuals in need of emergency medical care and receive that care within a reasonable amount of time.

3.10    YMCA, YMCA of Metropolitan Dallas, Nike USA, Inc., Next Level Ballers, and Wes Grandstaff, have each had significant experience in organizing and sponsoring basketball tournaments like the one at issue in this case.  They were each aware of the danger that would be caused by the failure to have available emergency medical equipment.  They were each aware of the danger that would be caused by the failure to have trainers certified in CPR available to act in the event of a medical emergency.  They were each aware of the danger that would be caused by the failure to provide adequate ingress and egress into the facility where this tournament was taking place, such that outside emergency medical personnel would gain access to the facility and reach persons in need of emergency medical care.

3.11    Upon information and belief, had the defendants provided trainers certified in CPR, provided emergency medical equipment or provided adequate ingress and egress to and from the facility, DeShawn Newton would have survived the sudden emergency medical condition that eventual[ly] led to his death.    Upon information and belief, the defendants failed to provide these adequate safety measures for the sole purpose of avoiding the expense and in violation of the usual and customary standards employed by organizers and sponsors of similarly sized tournaments.

3.12    Upon information and belief, the failure to provide the safety measures alleged herein was egregious, grossly negligent and in reckless disregard for the safety of the person participating in this basketball tournament.

> 3.13    The injuries that were suffered by the plaintiffs and specifically DeShawn Newton were not of the kind that are inherent in the risks associated with playing basketball.  DeShawn's death could have been prevented had the defendants provided the safety measures alleged herein.   Upon information and belief, the defendants' failures to take such safety precautions were the direct and proximate cause of the injuries to each of the plaintiffs and specifically those of DeShawn Newton.

Compl. ¶¶ 3.3-3.13.

## B.    Negligent Activity

Under Texas law, "[t]he elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty." *Doe v. Boys Club of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995) (citations omitted).  Proximate cause consists of two components: "cause in fact and foreseeability." *Id.*  Regarding these components, the Texas Supreme Court has stated the following:

> These elements cannot be established by mere conjecture, guess, or speculation.  The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about injury, without which the harm would not have occurred.  Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible. . . .   The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries [and] justify the conclusion that such injury was the natural and probably result thereof.
>
> . . . .
>
> Foreseeability, the other aspect of proximate cause, requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission.  The danger of injury is foreseeable if its general character might reasonably have been anticipated.  The question of foreseeability, and proximate cause generally, involves a practical inquiry based on common experience applied to human conduct.  It asks whether the injury might reasonably have been contemplated as a result of the defendant's conduct.  Foreseeability requires more than someone, viewing the

> facts in retrospect, theorizing an extraordinary sequence of events
> whereby the defendant's conduct brings about the injury.

*Id.* at 477-78 (internal quotation marks, citations and ellipses omitted).

Plaintiffs contend that "[o]rdinary premises liability rules apply to acts of negligence of the

defendants." Compl. ¶ 3.14. This is an incorrect statement of the law. Under Texas law, negligent

activity and premises liability are separate claims:

> Recovery on a negligent activity theory requires that the person have
> been injured by or as a contemporaneous result of the activity itself
> rather than by a condition created by the activity. Negligence in the
> former context means simply doing or failing to do what a person of
> ordinary prudence in the same or similar circumstances would have
> not done or done. Negligence in the latter context means failure to
> use ordinary care to reduce or eliminate an unreasonable risk of harm
> created by a premises condition which the owner or occupier [of
> land] knows about or in the exercise of ordinary care should know
> about.

*Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998) (internal

quotations and footnotes omitted) (original). In other words, unlike a negligent activity claim, "a

premises defect claim is based on the property itself being unsafe." *State v. Shumake*, 199 S.W.3d

279, 284 (Tex. 2006).

Assuming that YMCA-MD owed a duty to Plaintiffs, Plaintiffs fail to raise a genuine dispute

of material fact as to the remaining elements of a cause of action for negligence. No evidence

remotely intimates that YMCA-MD breached a duty owed to Plaintiffs. Moreover, no evidence

exists to establish causation, that is, that Plaintiffs' injuries were proximately caused by YMCA-

MD's negligent conduct. Plaintiffs produced no evidence to establish that DeShawn's death would

not have occurred had YMCA-MD done everything Plaintiff's alleged that it failed to do. For these

reasons, no genuine dispute of material fact exists regarding YMCA-MD's negligence, and it is

entitled to judgment as a matter of law on Plaintiffs' claim of negligence.

### C.      Premises Liability

To the extent Plaintiffs base their claim on premises liability, which apparently is based on

the alleged lack of ingress and egress at the facility where DeShawn was playing basketball.  This

basis, as well as any other purported basis asserted by Plaintiffs, is without merit.  The elements of

a premises liability claim are:

> (1) [a]ctual or constructive knowledge of a condition on the premises
> by the owner or occupier; (2) [t]hat the condition posed an
> unreasonable risk of harm; (3) [t]hat the owner or occupier did not
> exercise reasonable care to reduce or eliminate the risk; and (4) [t]hat
> the owner or occupier's failure to use such care proximately caused
> the plaintiff's injury.

*CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000) (citations omitted).  YMCA-MD argues

that there is no evidence to support any of the elements of a premises liability claim.  The court

agrees.

Plaintiffs have put forth no evidence to support any of the elements of a premises liability

claim.  Moreover, even if such evidence exists, there is absolutely no evidence to establish that the

alleged failure to reduce or eliminate the unreasonable risk or unsafe condition proximately caused

Plaintiffs to suffer any injury.  No evidence in the record suggests that DeShawn would not have

died had YMCA-MD done everything Plaintiffs alleged that it did not do.  As there is no genuine

dispute of material fact regarding Plaintiffs' premises liability claim, YMCA-MD is entitled to

judgment as a matter of law on this claim.

### D.      Wrongful Death

Plaintiffs also make a claim under the Texas Wrongful Death Act (Tex. Civ. Prac. & Rem.

Code Ann. §§ 71.002, 71.004 (West 2008)).  Such claim must be based on a "wrongful act, neglect,

carelessness, unskillfulness, or default."  *Id.* § 71.002(b).  Plaintiffs make no claim under the Texas

Survival Statute (Tex. Civ. Prac. & Rem. Code Ann. § 71.021 (West 2008)); however, even

assuming such claim has been asserted, it necessarily fails for the same reason, that the wrongful

death claim fails.  The Texas Wrongful Death Act "confers a cause of action upon the surviving

spouse, children, and parents of a decedent for their damages resulting from the decedent's death."

*THI of Texas at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 568 (Tex. App. — Amarillo 2010, pet.

denied) (citation omitted). On the other hand, the Texas Survival Statute allows "a decedent's heirs,

legal representatives, and estates to bring actions for personal injury the decedent suffered before

his death."  *Id.*  As Plaintiffs' claims are based on negligence, and the court has ruled that the

evidence does not support a claim of negligence, the claims under both statutes necessarily fail.

YMCA-MD is therefore entitled to judgment as a matter of law on these claims.  Further, as

Plaintiffs' claims of negligence fail as a matter of law, their claims of gross negligence necessarily

fail.

### E.      Plaintiffs' Claim of "Outrage"

Plaintiffs assert a claim of "outrage" in the Complaint.  While the Complaint is not a model

of pellucid draftsmanship as to this claim, the court assumes that Plaintiffs are attempting to assert

a claim for intentional infliction of emotional distress.  The court makes this assumption because the

elements of such a claim are: "1) the defendant acted intentionally, 2) the conduct was extreme and

outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the

emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993) (quoting the Restatement (Second) of Torts § 46 (1965)).  The Texas Supreme Court defines extreme and outrageous conduct as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (internal quotation marks and citations omitted).  Once again, the evidence in this case, even under the most liberal reading, simply does not raise a genuine dispute of material fact that YMCA-MD's conduct was outrageous as defined by the Texas Supreme Court. Accordingly, YMCA-MD is entitled to judgment as a matter of law on this claim.[3]

## VI.    Conclusion

For the reasons stated herein, the court determines that no genuine dispute of material fact exists with respect to any claims or purported claims asserted by Plaintiffs against YMCA-MD. Accordingly, YMCA-MD is entitled to judgment as a matter of law, and the court **grants** the Motion for Summary Judgment of YMCA of Metropolitan Dallas.  The court **dismisses with prejudice** all claims asserted by Plaintiffs against YMCA-MD.

**It is so ordered** this 20th day of July, 2012.

Sam A. Lindsay
United States District Judge

---

[3] As no evidence exists to support the claim of intentional infliction of emotional distress, the court determines that it is unnecessary to address YMCA-MD's argument that intentional infliction of emotional distress is a gap-filler tort that cannot be maintained as a separate claim unless "the victim has no other recognized theory of redress." *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citation omitted).